UNITED STATES DISTRICT COURT

DISTRICT OF MAINE

| | |
|---|---|
| LAWRENCE J. GRARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) 1:11-cv-00064-GZS |
| | ) |
| MAINE TODAY MEDIA, | ) |
| | ) |
| Defendant | ) |

**RECOMMENDED DECISION ON
DEFENDANT'S MOTION TO DISMISS
(Doc. No. 14)**

Plaintiff Lawrence J. Grard was Defendant Maine Today Media's employee from January 1991 until his termination on November 10, 2009. Defendant terminated Plaintiff from employment the day after Plaintiff sent an email to the Human Rights Campaign[1] relating to the recent Maine referendum vote that rejected a proposal that would have allowed same-sex couples to marry in Maine. Plaintiff maintains that he was discriminated against and treated unfairly because of his religious beliefs in violation of the Maine Human Rights Act and Title VII of the Civil Rights Act of 1964. He also alleges in the third and fourth causes of action that Defendant retaliated against him under both statutory schemes. Defendant has filed a motion to dismiss the two retaliation causes of action, arguing failure to exhaust administrative remedies and failure to state a plausible claim of retaliation under either statutory scheme. The Court referred the motion for report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). I now recommend the court grant the motion and dismiss Counts III and IV of the complaint.

---

[1]  Plaintiff alleges that Human Rights Campaign is a national organization based in Washington, D.C., which advocates for gay rights and supports gay marriage. (Compl. ¶ 27).

**MOTION TO DISMISS STANDARD**

Federal Rule of Civil Procedure 12(b)(6) provides that a complaint can be dismissed for "failure to state a claim upon which relief can be granted." In deciding a motion to dismiss, the court accepts as true the factual allegations of the complaint, draws all reasonable inferences in favor of the plaintiff that are supported by the factual allegations, and determines whether the complaint, so read, sets forth a plausible basis for recovery. Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 320 (1st Cir. 2008). To properly allege a claim in federal court, it is not enough merely to allege that a defendant acted unlawfully; a plaintiff must affirmatively plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007)).

The Defendant's motion introduces exhibits consisting of administrative charges of employment discrimination. Plaintiff's complaint does not describe the administrative charge but recites that the charge was filed as an administrative prerequisite to filing suit. (Compl. ¶ 16.) Consideration of the content of the charge is appropriate in light of Plaintiff's necessary reference to the charging instrument in his complaint and the significance of the administrative charge in terms of Plaintiff's right to obtain relief in this forum. Moreover, Plaintiff does not voice any opposition to consideration of these exhibits and it appears undisputed that they are authentic versions of the charging instrument. See Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co., 267 F.3d 30, 33-34 (1st Cir. 2001).

**COMPLAINT ALLEGATIONS**

There are no documents attached to the complaint and no other materials in the record that are expressly incorporated into Plaintiff's factual allegations. Defendant, however, has

attached two Maine Human Rights Commission forms to its motion to dismiss. For purposes of the motion to dismiss, the following allegations are deemed true although Defendant denies most of the allegations in its answer, filed on even date with the motion to dismiss.

Plaintiff Grard is a resident of the State of Maine and resided in the State of Maine at all times relevant to this charge. (Compl. ¶ 20.) He was hired by Defendant in January 1991 as a journalist. (Id. ¶ 21.) Plaintiff has over thirty years of journalism experience. (Id. ¶ 22.) He was a strong performer who (at the time of his termination) had been employed by Defendant for eighteen (18) years, and was never criticized concerning his work performance until the incidents that gave rise to this lawsuit. (Id. ¶ 23.) Plaintiff was promoted and given raises throughout his employment with defendant, and held the position of reporter and journalist before he was terminated. (Id. ¶ 24.)

In 2009, Maine voters rejected a proposed law that, in pertinent part, would have allowed same-sex couples to marry in Maine. (Id. ¶ 26.) In or about November 2009, Plaintiff received a press release (contained in an email) from the Human Rights Campaign. That press release, in sum and substance, blamed the defeat of the same-sex marriage legislation on anti-gay animus and the hatred of gays. (Id. ¶ 28.)

On or about November 9, 2009, Plaintiff sent an email in response to the press release. (Id. ¶ 29.) That email stated: "Who are the hateful, venom spewing ones? Hint: Not the yes on 1 crowd. You hateful people have been spewing nothing but vitriol since this campaign began. Good Riddance!" (As used in the email, the "yes on 1 crowd" refers to those in favor of striking down the legislation that would have permitted same-sex marriage in Maine, and the phrase "you hateful people" refers to those in favor of same-sex marriage.) (Id. ¶ 30.) Although Plaintiff sent the email while on Defendant's premises using Defendant's computer, he used his personal (*i.e.*,

non-work) email account. (Id. ¶ 31.) He thought at the time that the email would be anonymous. (Id. ¶ 32.) Plaintiff believed that the Campaign's press release was anti-Christian and he refused to be swayed from his opinion. (Id. ¶ 33.)

Prior to his termination, Plaintiff spoke to his superiors concerning what he considered to be slanted religious coverage of the gay marriage issue. (Id. ¶ 34.) Negative comments regarding religion in general, and Christianity in particular, were not uncommon in Defendant's newsroom. (Id. ¶ 35.) For example, one reporter at Defendant's newsroom called Christianity a "myth." (Id. ¶ 36.) Another reporter said that "he goes as fast as he can when he goes by a church," in a manner and context suggesting an anti-religious and/or anti-Christian/Catholic bias. (Id. ¶ 37.) The day after the vote repealing the gay marriage law, another reporter in Defendant's newsroom said to Plaintiff, in sum and substance, that there are "just too many religious people around here." (Id. ¶ 38.) On one occasion, one of Defendant's editors sent Plaintiff an email (to his work email address) stating his opinion that the Gospel-writer Luke would have supported gay marriage. (Id. ¶ 39.)

Plaintiff's termination was effective November 10, 2009, the day after he sent his email to the Campaign. (Id. ¶ 40.) Upon information and belief, Defendant does not have a policy prohibiting the use of the internet and the use of company computers/property to send emails. (Id. ¶ 41.) Most other employees of Defendant access the internet via Defendant's computers. (Id. ¶ 42.) Upon information and belief, Plaintiff was the only employee to be terminated for accessing the internet using the Defendant's computers/property. (Id. ¶ 43.) Plaintiff believes he was terminated because he expressed his Christian religious beliefs and because of the anti-religious work environment existing within Defendant's offices. (Id. ¶ 44.)

4

Shortly after Plaintiff's termination, Defendant informed Plaintiff's wife, who was writing for Defendant on a part-time basis, that her services were no longer required. (Id. ¶ 45). Plaintiff's wife also adheres to the Christian faith and, upon information and belief, this was known to Defendant. (Id. ¶ 46). Plaintiff's wife is a schoolteacher at a Catholic school. (Id. ¶ 47).

On at least one occasion, Defendant removed from Plaintiff's wife's column a notation that she worked for an institution with religious affiliation. (Id. ¶ 48). Upon information and belief, Defendant did not remove such notations that pertained to non-religious employment or affiliations. (Id. ¶ 49). The above-referenced discriminatory and retaliatory acts are a representative sample, but not an exhaustive list, of the unlawful actions committed by Defendant. (Id. ¶ 50). Plaintiff suffered emotional damages as a result of the above-referenced conduct by Defendant. (Id. ¶ 51).

## DISCUSSION

Defendant argues that Plaintiff's retaliation theory is not actionable because Plaintiff's allegations fail to state a retaliation claim and because Plaintiff failed to pursue that theory administratively. I address the state and federal statutory schemes separately and agree with Defendant that Plaintiff has failed to state a claim of retaliatory discharge, as opposed to discriminatory discharge.

**A.      Title VII and Retaliation Claims**

Title VII of the Civil Rights Act of 1964 forbids employment discrimination based on religion. 42 U.S.C. § 2000e-2(a). A separate section of the Act—identified as its anti-retaliation provision—forbids an employer from "discriminat[ing] against" an employee or job applicant because that individual "opposed any practice made unlawful by Title VII" or "made a charge,

5

testified, assisted, or participated in" a Title VII proceeding or investigation. 42 U.S.C. § 2000e-3(a). Plaintiff grounds his retaliation count on the first clause of the statute, the so-called opposition clause, citing Crawford v. Metropolitan Government of Nashville and Davidson County, 129 S. Ct. 846 (2009). Plaintiff's theory is that the Supreme Court's definition of oppose, which includes "to resist or antagonize . . .; to contend against; to confront; resist; withstand," or "to be hostile or adverse to, as in opinion," id. at 850, covers the conduct described in the complaint. (Pl.'s Opp'n Mem. at 9, Doc. No. 19.)

Clearly, Plaintiff's allegations describe his stated "opposition" to the allegedly "slanted" news coverage by his employer. His complaint also articulates his opposition to same sex marriage, in general, and to the viewpoint expressed in the Human Rights Campaign's news release, in particular. The issue is whether the allegations present a plausible claim that Plaintiff somehow acted in opposition to an employment practice made unlawful under Title VII. Neither favoring same sex marriage nor printing slanted news articles is an unlawful employment practice in and of itself.

In the classic retaliation scenario there is little doubt but that the plaintiff held a hostile opinion concerning a prohibited employment practice. In Crawford, the plaintiff was interviewed by the employer regarding another employee's complaint about sexual harassment in the workplace and made clear that she had herself observed various instances of sexually harassing behavior by another employee. Giving voice to one's opposition is not necessarily required. In fact, the First Circuit has determined that merely repeatedly accompanying a coworker to the human resources department to file complaints about sexual harassment, followed by employer action that would be perceived as materially adverse by a reasonable worker, can state a claim under the retaliation clause. Collazo v. Bristol-Myers Squibb Mfg.,

Inc., 617 F.3d 39, 47-48 (1st Cir. 2010). These cases clearly stand for the proposition that "opposition" can be broadly construed, but it still must be opposition to workplace conditions, not opposition to general social issues.

In Burlington Northern and Santa Fe Railway Company v. White, 548 U.S. 53 (2006), the Supreme Court fully explained the rationale for Title VII's anti-retaliation provision and the seemingly "anomalous" result that the statute provides broader protection for victims of retaliation than for those whom Title VII primarily seeks to protect. Id. at 64. The objective of the anti-discrimination provision is to provide a workplace where individuals are not discriminated against because of their religious beliefs or other protected status. The anti-retaliation provision "seeks to secure that primary objective [a nondiscriminatory workplace] by preventing an employer from interfering (through retaliation) with an employee's efforts to secure or advance enforcement of the Act's basic guarantees." Id. at 63. Once the statute's purpose is put into perspective, it is apparent that the opposition pled by Plaintiff had nothing to do with his opposition to prohibited employment practices. Indeed, the only factual allegations concerning opposition made by Plaintiff involve his opposition to same-sex marriage and the editorial practices of his employer favoring same-sex marriage. Although Plaintiff describes comments by co-workers that could be viewed as anti-religious, he does not allege that he ever complained to a supervisor or editor about the workplace chatter. The one comment he attributes to a supervisor/editor, an opinion regarding the views of St. Luke, appears to be an expression regarding a religious viewpoint (albeit one with which Plaintiff disagrees), not an anti-religious viewpoint.

Making known that one opposes same-sex marriage and the "slanted" coverage of a newspaper is not the equivalent of opposing an unlawful workplace practice. Plaintiff does not

allege that he told his supervisors about the comments he viewed as anti-religious that allegedly permeated the newsroom. Nor does he allege that he complained to anyone either in the newsroom or outside the newsroom about these workplace issues prior to his and his wife's termination from employment.[2]

Assuming that Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002), as affirmed in Bell Atlantic Corporation v. Twombly, 550 U.S. 544, 547 (2007), supplies the pleading standard in this case, Plaintiff has not pled a plausible retaliation case. His complaint is devoid of *any* facts suggesting his opposition was directed at this employer's practices in the workplace, as opposed to a showing that his opposition was directed against gay marriage and its supporters. Consequently, in his fourth count, Plaintiff fails to state a claim for which relief may be granted.

**B.     Retaliation under the Maine Human Rights Act**

To demonstrate a prima facie case of improper retaliation under the Maine Human Rights Act, 5 M.R.S. § 4633(1), a plaintiff "must show that she engaged in statutorily protected activity; her employer made an employment decision that adversely affected her; and that there was a causal link between the protected activity and the adverse employment action." Watt v. UniFirst Corp., 2009 ME 47, ¶ 33, 969 A.2d 897, 906 (quoting Doyle v. Dep't of Human Servs., 2003 ME 61, ¶ 20, 824 A.2d 48, 55–56). Plaintiff's allegations fail in respect to the first prong.

---

[2] The alleged retaliation in this case is Plaintiff's termination, so there is no question that the sanction met the materially adverse standard. Plaintiff does not complain of any other *retaliatory* action by Defendant. I note that the allegations concerning the termination of Plaintiff's wife do not suggest that she was fired for any reason other than the same reason which led to Plaintiff's termination, *i.e.*, religious discrimination by the employer.
    It is easy to imagine a Title VII retaliation claim wherein the plaintiff alleges that his spouse was terminated in retaliation for his opposition to an unlawful employment practice. Here, however, Plaintiff alleges that his wife was fired "shortly after" his termination in November 2009 and he made no complaint to the EEOC until January 2010. Of course, workplace retaliation can occur before a formal complaint to the EEOC has been made, because obviously the opposition clause of the anti-retaliation provision does not require participation in a formal process. Nevertheless, in order to bring an action under the anti-retaliation provision, the plaintiff must have "opposed" conduct prohibited by Title VII, in this case, a workplace permeated with a hostile environment directed against Catholics and/or Christians and/or termination of a Christian from employment. On the facts as pled in this complaint, there is no allegation that Plaintiff complained about a hostile work environment toward Christians or about termination because of Christian beliefs (his discrimination claims) until he filed his complaint with the agency.

His "retaliation" claim is nothing more than his "discrimination" claim given a new name. For this reason, the Court should dismiss the third count as well.

**C.      The Administrative Charge**

The crux of Plaintiff's administrative charges (attached to the motion to dismiss at docket entries 14-1 and 14-2) was that he was discriminated against and terminated because of his religious beliefs as expressed in his email to the Human Rights Campaign. If the Court disagrees with my conclusion that this complaint fails to state a claim for retaliation, the Title VII[3] retaliation count should be dismissed, nevertheless, because it was not included in the administrative charge. Title VII requires that prior to filing a civil lawsuit a complainant must first file an administrative charge with the EEOC within a relatively short time frame. This provides a statutory exhaustion/statute of limitation requirement and is not jurisdictional in nature. See Zipes v. Trans World Airlines, Inc., 455 U.S. 385, 393-95 & n.12 (1982). When dealing with retaliation claims, the rule of Clockedile v. New Hampshire Department of Corrections, 245 F.3d 1, 6 (1st Cir. 2001), applies to this exhaustion requirement. Under the Clockedile rule, retaliation claims are preserved "so long as the retaliation is reasonably related to and grows out of the discrimination complained of to the agency – *e.g.*, the retaliation is for filing the agency complaint itself." Id.

Plaintiff never identified any "protected activity" for the administrative agency to consider. Consequently, it is impossible to treat these claims as reasonably related to that kind of activity. Using a company email to express one's displeasure with a third party's press release to that third party is simply not the same thing as expressing opposition to an employment condition under Title VII. There is nothing in the email that signals any opposition to an

---

[3]      Failure to exhaust a claim under the Maine Human Rights Act does not provide a separate basis for dismissal; it merely limits available remedies. 5 M.R.S. § 4622; Walton v. Nalco Chem. Co., 272 F.3d 13, 20-22 (1st Cir. 2001).

unlawful employment practice. If Plaintiff reasonably believed that he was fired in retaliation for his opposition to his employer's *workplace* practices, his administrative complaint should have included a claim to that effect.

In essence, Plaintiff is now saying that even if he was not fired because of religious animus and even if his workplace was not actually a hostile environment, his employer retaliated against him when he expressed his political views to a third party and thus he is entitled to the broader sweep of protection afforded by the anti-retaliation provisions of Title VII. This claim is very different from his discrimination claim and if Plaintiff now contends that he somehow reasonably believed that his email expressed his opposition to activities in his workplace prior to his termination, he needed to include those allegations in his administrative complaint. Under the Clockedile standard they are certainly not allegations that logically flow from or "grew out of the alleged discrimination." Id. at 6. As alleged, Defendant fired Plaintiff the day after he sent his comments to the Human Rights Campaign because of discriminatory animus based on Grard's religious beliefs. Grard's opposition to an unlawful workplace practice is simply not part of the picture.

**Conclusion**

Based upon the foregoing, I recommend that the Court grant the motion to dismiss Counts III and IV of the complaint.

NOTICE

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which *de novo* review by the district court is sought, together with a supporting memorandum, and request for oral argument before the district judge, if any is sought, within fourteen (14) days of being served with a copy thereof. A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to *de novo* review by the district court and to appeal the district court's order.

/s/ Margaret J. Kravchuk
U.S. Magistrate Judge

June 29, 2011